1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JESSE ZAMORA, et al., | Case No. 19-CV-06133-LHK |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |
| v. | Re: Dkt. No. 20 |
| WENDY'S INTERNATIONAL, LLC, | |
| Defendant. | |

Plaintiffs Jesse Zamora, Lonia Smith, Roy Rios, and Daniel Onn (collectively, "Plaintiffs")

filed this putative class action against Defendant Wendy's International, LLC ("Defendant").

Plaintiffs are individuals with visual impairments who allege that Defendant violated Plaintiffs'

rights under the Americans with Disabilities Act ("ADA") and California's Unruh Act because

Defendant's restaurants only permit "drive-thru" service after certain hours at night.  Before the

Court is Defendant's motion to dismiss Plaintiffs' amended complaint.[1]  ECF No. 20.  Having

---

[1] Defendant's motion to dismiss contains a notice of motion that is separately paginated from the memorandum of points and authorities in support of the motion.  *See* ECF No. 20.  Civil Local Rule 7-2(b) provides that the notice of motion and the points and authorities in support of the motion must be contained in one document with a combined limit of 25 pages.  *See* Civ. Loc. R. 7-2(b).

1

considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss with leave to amend.

## I.     BACKGROUND

### A. Factual Background

Plaintiffs Jesse Zamora, Lonia Smith, Roy Rios, and Daniel Onn are California residents who have visual impairments that render them unable to operate a motor vehicle.  ECF No. 15 ¶¶ 10–13 ("FAC").  Defendant Wendy's International, LLC is a corporation with its headquarters in Ohio.  *Id.* ¶ 14.

According to the First Amended Complaint ("FAC"), more than 270 Wendy's-branded restaurants are located in California.  *Id.* ¶ 16.  Plaintiffs allege Wendy's restaurants offer both counter service and "drive-thru" service.  *Id.* ¶¶ 26–29.  Late at night, many Wendy's restaurants remain open but counter service is not available to serve food.  *Id.* ¶ 32.  Instead, customers must use the drive-thru to obtain food.  *Id.* ¶ 32.  The restaurants, however, do not permit pedestrians to use the drive-thru, with the result that pedestrians are unable to obtain food during these late-night periods.  *Id.* ¶¶ 33–35.

Plaintiffs allege that Defendant "owns, operates and/or leases" Wendy's restaurants and requires all Wendy's-branded restaurants to follow a "system of rules, directives, and/or commands" called the "Wendy's System."  *Id.* ¶¶ 15, 18–24.  The FAC however, does not allege any of the content of the "Wendy's System" or whether the "Wendy's System" concerns accessibility related issues.  *Id.* ¶¶ 19–24.  Instead, the FAC only alleges that the "'Wendy's System' does not include any policy, procedure, protocols, or infrastructure for assisting, aiding, or serving visually-impaired would-be customers of Wendy's-branded restaurants."  *Id.* ¶ 25.

In approximately March 2019, Plaintiff Zamora sought to obtain food from the Wendy's restaurant at 800 Bellevue Road, Atwater, California during its late-night opening time, but was unable to obtain food independently because the lobby doors were locked and he was unable to operate a motor vehicle.  *Id.* ¶¶ 40–43.  Plaintiff Zamora visits this Wendy's location once a week during the late-night hours and requires assistance from a third party to access it.  *Id.* ¶ 44.

In June 2019, Plaintiff Smith sought to obtain food from the Wendy's restaurant at 1001 Redwood Street, Vallejo, California, but was unable to obtain food independently because the lobby doors were locked and she was unable to operate a motor vehicle. *Id.* ¶¶ 49–52.  Plaintiff Smith visits this Wendy's location regularly and has walked there from her mother's house. *Id.* ¶¶ 49, 53, 55.

In May 2019, Plaintiff Rios sought to obtain food from the Wendy's restaurant at 7570 Orangethorpe Avenue, Buena Park, California, but was unable to obtain food independently because the lobby doors were locked and he was unable to operate a motor vehicle. *Id.* ¶¶ 61–64. Plaintiff Rios visits this Wendy's location frequently and has walked there from his home. *Id.* ¶¶ 65, 67.

In mid-2019, Plaintiff Onn sought to obtain food from the Wendy's restaurant at 782 S. Bascom Avenue, San Jose, California at about 11:00 p.m., but was unable to obtain food independently because the lobby doors were locked and he was unable to operate a motor vehicle. *Id.* ¶¶ 74–78.  This Wendy's location closes its lobby at 10:00 p.m. but stays open for drive-thru service until midnight. *Id.* ¶ 77.  Plaintiff Onn travels to San Jose approximately twice per month to visit friends and often attends movies that last until after 10:00 p.m. in a shopping center near this Wendy's location. *Id.* ¶¶ 73, 79.

**B.  Procedural History**

Plaintiffs filed their initial complaint on September 26, 2019.  ECF No. 1.  Plaintiffs asserted claims (1) under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq.*; (2) under California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51 *et seq.*; and (3) for declaratory relief. *Id.* ¶¶ 94–115.  Plaintiffs also sought to certify a nationwide class of Wendy's customers who were unable to drive due to a visual disability and a California class of Wendy's customers who were unable to drive due to a visual disability. *Id.* ¶ 84.

On November 22, 2019, Defendant filed a motion to dismiss Plaintiffs' complaint.  ECF No. 14.  In that motion, Defendant also requested, in the alternative, to transfer the case to the

United States District Court
Northern District of California

1    Southern District of Ohio or to stay the case on the grounds that a similar case, *Davis v. Wendy's*

2    *International, LLC*, No. 19-CV-04003 (N.D. Ill. filed Jun. 14, 2019), was then in progress in the

3    Northern District of Illinois.  *Id.*

4         On December 6, 2019, Plaintiffs filed the First Amended Complaint, ECF No. 15 ("FAC"),

5    which mooted Defendant's motion to dismiss, *see* ECF No. 24.  In the FAC, Plaintiffs again assert

6    claims (1) under Title III of the ADA, (2) under the Unruh Act, and (3) for declaratory relief.  *Id.*

7    ¶¶ 94–115.  In the FAC, Plaintiffs no longer seek to certify a nationwide class.  Instead, Plaintiffs

8    seek to certify: (1) an "ADA Class" of "all California residents who are unable to drive by reason

9    of visual disability and who are unable to access a Wendy's restaurant located in the state of

10   California by virtue of Wendy's drive-thru-only hours," and (2) an "Unruh Class" of "all

11   California residents who are unable to drive by reason of visual disability and who have been

12   denied access or deterred from accessing one or more Wendy's restaurants in the state of

13   California by virtue of Wendy's drive-thru-only hours."  *Id.* ¶ 84.

14        On December 20, 2019, Defendant filed the instant motion to dismiss the FAC.  ECF No.

15   20 ("Mot.").  Plaintiffs filed their opposition on January 3, 2020.  ECF No. 21 ("Opp.").  On

16   January 10, 2020, Defendant filed its reply.  ECF No. 22 ("Reply").

17   **II.    LEGAL STANDARD**

18        **A.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

19        Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

20   short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

21   that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure

22   12(b)(6).  The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead

23   "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v.*

24   *Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

25   factual content that allows the court to draw the reasonable inference that the defendant is liable

26   for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility

27   standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

28

4

1    defendant has acted unlawfully." *Id.* (internal quotation marks omitted).  For purposes of ruling

2    on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

3    construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.*

4    *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

5         The Court, however, need not "assume the truth of legal conclusions merely because they

6    are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)

7    (per curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and

8    unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355

9    F.3d 1179, 1183 (9th Cir. 2004).

10   **B.  Leave to Amend**

11        If the Court determines that a complaint should be dismissed, the Court must then decide

12   whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave

13   to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

14   of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."

15   *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation

16   marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should

17   grant leave to amend even if no request to amend the pleading was made, unless it determines that

18   the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal

19   quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing

20   amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

21   moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

22   (9th Cir. 2008).

23   **III.  DISCUSSION**

24        Plaintiffs assert claims under Title III of the ADA and the California Unruh Act.  Title III

25   of the ADA provides in part that "[n]o individual shall be discriminated against on the basis of

26   disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

27   or accommodations of any place of public accommodation by any person who owns, leases (or

28

5

United States District Court
Northern District of California

1    leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

2          Plaintiffs' Unruh Act claims are largely based on their ADA claims. FAC ¶¶ 109–110. "A

3    violation of the ADA is, by statutory definition, a violation of . . . the Unruh Act." *Cullen v.*

4    *Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012) (citing Cal. Civ. Code §§ 51(f),

5    54.1(d)). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages,

6    litigants in federal court in California often pair state Unruh Act claims with federal ADA claims."

7    *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 731 (9th Cir. 2007). The parties agree that if Plaintiffs'

8    ADA claims fail, so do Plaintiffs' Unruh Act claims. As a result, the Court follows the parties'

9    arguments and focuses its analysis on Plaintiffs' ADA claims. *See also Smith v. Pride Mobility*

10   *Prod. Corp.*, No. 16-CV-04411-LHK, 2016 WL 6393549, at *6 (N.D. Cal. Oct. 28, 2016)

11   (dismissing an Unruh Act claim that was premised on an ADA violation when plaintiff failed to

12   state a claim under the ADA).

13         "To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is

14   disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

15   operates a place of public accommodation; and (3) the plaintiff was denied public

16   accommodations by the defendant because of his disability." *Doe One v. CVS Pharmacy, Inc.*,

17   348 F. Supp. 3d 967, 986 (N.D. Cal. 2018) (citing *Molski*, 481 F.3d at 730). The parties do not

18   dispute that Plaintiffs are disabled within the meaning of the ADA or that Wendy's restaurants are

19   places of public accommodation.

20         Rather, Defendant moves the Court to dismiss Plaintiffs' ADA claims on two grounds

21   related to the second and third elements. First, Defendant argues that Plaintiffs "fail to allege that

22   Wendy's discriminated against them on the basis of disability." Mot. at 1. Second, Defendant

23   contends that Plaintiffs "do not allege that Wendy's owned, leased, or operated the restaurant

24   locations at issue." *Id*. Because the Court agrees with the second contention that Plaintiffs do not

25   adequately allege that Defendant owned, leased, or operated the relevant restaurants at issue in the

26   instant case, the Court need not reach Defendant's first argument.

27   **A. The FAC Does Not Adequately Plead that Defendant Owns, Leases, or Operates the**

28
     Case No. 19-CV-06133-LHK
     ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

**Relevant Restaurants Within the Meaning of Title III of the ADA**

Title III's prohibition of discrimination applies to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Plaintiffs contend that the FAC sufficiently alleges that Defendant "owns" or "operates" the restaurants at issue. Opp. at 8–9. The Court first addresses whether the FAC adequately pleads that Defendant "owns" the relevant restaurants before analyzing Plaintiffs' remaining argument that Defendant "operates" the relevant restaurants.

### 1. Plaintiffs Do Not Adequately Plead that Defendant "Owns" The Relevant Restaurants

Defendant argues that "Plaintiffs do not allege [Defendant] owns . . . the restaurants they visited" and instead, the FAC simply alleges that Defendant "owns . . . *some* restaurants." Mot. at 9 (emphasis in original). The Court agrees.

The FAC's only allegation regarding Defendant's ownership of restaurants appears in paragraph 17, where Plaintiffs plead that "[s]ome Wendy's restaurants are owned and operated entirely by the Defendant, while others are co-owned and/or co-operated by franchisees and Wendy's." FAC ¶ 17. Notably absent is any allegation that Defendant owns or co-owns the four specific restaurants where the named plaintiffs allegedly experienced discrimination. Indeed, Plaintiffs' own opposition acknowledges that the FAC only pleads that "Wendy's owns some if its restaurants" and "owns other restaurants together with franchisees." Opp. at 9. Plaintiffs do not argue—in either the FAC or their opposition—that Defendant owns the restaurants at issue in this litigation. Furthermore, the fact that Plaintiffs spend only one paragraph in their opposition arguing this point is further indication that the FAC does not adequately plead that Defendants own or co-own the specific restaurants at issue here.

Accordingly, the Court concludes that Plaintiffs have failed to sufficiently allege that Defendants own the four specific restaurants relevant to the instant case. As a result, insofar as Plaintiffs seek to hold Defendant liable as an "owner" of the four Wendy's-branded restaurants, the FAC does not contain sufficient allegations to do so.

### 2. Plaintiffs Do Not Adequately Plead that Defendant "Operates" The Relevant

7

**Restaurants**

The Court now turns to Plaintiffs' argument that the FAC sufficiently alleges that Defendant "operates" the four specific restaurants at issue here.

In the context of Title III, "[t]he Ninth Circuit has interpreted the term 'to operate' as 'to put or keep in operation,' 'to control or direct the functioning of,' or 'to conduct the affairs of; manage.'" *Lemmons v. Ace Hardware Corp.*, No. 12-cv-03936-JST, 2014 WL 3107842, at *6 (N.D. Cal. July 3, 2014) (quoting *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004)).  Specifically, "[t]o be considered an 'operator' under this definition, a person or entity must have an active and significant degree of control over the access[] related aspects of the facility in question."  *Id*. (citing *Lentini*, 370 F.3d at 849).

In adopting this standard, the Ninth Circuit relied on the Fifth Circuit's interpretation of "operate" in *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995).  *Lentini*, 370 F.3d at 849 ("We agree with the Fifth Circuit's guidelines for defining the scope of the verb 'to operate' in this context.").  District courts in the Ninth Circuit have therefore relied on *Neff* to determine whether a franchisor "operated" a place of public accommodation for the purposes of Title III of the ADA.  *See, e.g.*, *Lemmons*, 2014 WL 3107842, at *7 (applying the *Neff* standard); *Johnson v. Winchester Campbell Props., LLC*, No. 18-cv-04153-VKD, 2018 WL 6619940, at *4. (N.D. Cal. Dec. 18, 2018) (same); *Johnson v. Compton*, No. 16-CV-02961-JAM-CKD, 2017 WL 1353801, at *2 (E.D. Cal. Apr. 10, 2017) (same).

In *Neff*, the Fifth Circuit concluded that the term "operator" in the context of a franchise agreement depended on whether the franchisor "specifically control[led] the modification of the franchises to improve their accessibility to the disabled."  *Neff*, 58 F.3d at 1066.  Based on this reasoning, the Fifth Circuit determined that even though the franchise agreement gave the franchisor "the right to set standards for building and equipment maintenance and to 'veto' proposed structural changes," the franchisor was not an "operator" under Title III of the ADA and therefore could not be held liable.  *Id.* at 1068.  Indeed, even though the franchise agreement permitted the franchisor to "disapprove any proposed modifications to the . . . [s]tore building and

Case No. 19-CV-06133-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

1    equipment," such "limited . . . control over structural modifications" was not enough to hold the

2    franchisor liable as an "operator" under Title III of the ADA.  *Id*.

3            Therefore, in order to sufficiently allege that Defendant "operates" the relevant restaurants

4    through its "Wendy's System," the FAC must plead that through the "Wendy's System,"

5    Defendant "specifically control[led] the modification of the franchises to improve their

6    accessibility to the disabled."  *Neff*, 58 F.3d at 1066; *see also Lemmons*, 2014 WL 3107842, at *6

7    ("To be considered an 'operator' under this definition, a person or entity must have an active and

8    significant degree of control over the access[] related aspects of the facility in question."  *Id*.

9    (citing *Lentini*, 370 F.3d at 849)).  Any such allegations are wholly absent from the FAC.

10           Here, the FAC merely alleges that Defendant "operates all Wendy's-branded restaurants by

11   implementing, maintaining, and enforcing the Wendy's System as to all Wendy's-branded

12   restaurants."  FAC ¶ 19.  Notably absent  are any allegations about the contents of the "Wendy's

13   System," such as whether it includes other ADA access-related policies, in what manner

14   franchisees "are required" to follow it, whether it dictates when drive-thrus and counters are open,

15   or whether it provides a protocol for drive-thru access.  Indeed, the FAC appears to allege the

16   opposite—namely, that the "Wendy's System does not include any policy, procedure, protocols"

17   relating to accessibility for visually impaired customers.  *Id*. ¶ 25.  Thus, Plaintiffs fail to allege

18   that Defendant exercises control over the access-related aspects of the facilities in question.

19           Plaintiffs' case is far weaker than in *Neff*.  In *Neff*, the plaintiffs were able to point to a

20   franchise agreement that gave the franchisor "the right to set standards for building and equipment

21   maintenance and to 'veto' proposed structural changes."  *Neff*, 58 F.3d at 1068.  Even that

22   provision, however, was insufficient to hold the franchisor liable as an "operator" under Title III.

23   *Id*.  In the instant case, Plaintiffs lack any such allegations regarding whether Defendant

24   "specifically control[led] the modification of the franchises to improve their accessibility to the

25   disabled."  *Id*. at 1066.  Accordingly, Plaintiffs have failed to allege that Defendant "operates" the

26   relevant restaurants at issue in the instant case.

27           Other courts within the Ninth Circuit have reached the same conclusion on similar facts.

28
Case No. 19-CV-06133-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    *See O'Byrne v. Reed*, No. 09-CV-08406-DMG, 2010 WL 11596710, at *3 (C.D. Cal. Aug. 6,

2    2010) ("Thus, while Defendants 'conduct the affairs of' or 'manage' the vacation rentals in a

3    limited sense, they do not 'operate' the vacation rentals in the sense relevant to ADA liability, *i.e.*,

4    their operation of the vacation rentals does not impact the discrimination at issue.  It would be no

5    more reasonable to impose ADA liability on Defendants than on the employees working at the

6    front desk of a hotel, who—like Defendants—provide guests with keys and linens, manage

7    reservations, and collect payments on behalf of the owner."); *United States v. Days Inns of Am.*,

8    No. 96-CV-260-WBS, 1998 WL 461203, at *6 (E.D. Cal. Jan. 12, 1998) ("Therefore, even if Days

9    Inn were [sic] found to 'control' individual hotels' day-to-day activities, *Neff* and other courts that

10   have considered the issue appropriately deem the relevant inquiry to be the control over the

11   discriminatory conditions.  At most Days Inns has the same negative veto influence the *Neff* court

12   found inadequate to establish vicarious franchisor liability.  Here Days Inns simply does not

13   exercise the type of control that would trigger ADA liability." (citations omitted)).

14           For example, in *Lemmons*, the plaintiff argued that a franchising agreement that required

15   the franchisee "to abide by all federal and state laws, including those pertaining to disability

16   access" made the franchisor liable as an "operator" under Title III of the ADA.  2014 WL

17   3107842, at *7.  The court disagreed because "while these contractual terms might provide an

18   additional incentive to [the franchisee] to comply with federal and state laws, they [did] not grant

19   [the franchisor] the 'specific control' necessary to impose liability." *Id*.  Specifically, the

20   franchising agreement did not show that the franchisor "retained the authority under the agreement

21   to dictate the physical layout of the store" or "otherwise participated in the alleged acts of

22   discrimination against [the plaintiff]." *Id*.

23           That same logic applies here with even greater force.  Unlike *Lemmons*, Plaintiffs have not

24   included any allegations about the content of the "Wendy's System."  At best, the FAC alleges

25   that the "Wendy's System" does not include policies or procedures concerning accessibility for

26   visually impaired individuals, FAC ¶ 25, which, if anything, tends to demonstrate that Defendant

27   does not have "an active and significant degree of control over the access[] related aspects of the

28

Case No. 19-CV-06133-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    facility in question." *Lemmons*, 2014 WL 3107842, at *6.  Plaintiffs have therefore failed to

2    allege that Defendant "operates" the relevant Wendy's-branded restaurants within the meaning of

3    Title III of the ADA.  *Id*. (holding that the contract "[did] not grant [the franchisor] the 'specific

4    control' necessary to impose liability").

5              Finally, *Castaneda v. Burger King Corp.*, 597 F. Supp. 2d 1035 (N.D. Cal. 2009), a

6    decision denying a motion to dismiss in the context of a Title III ADA case, exemplifies Plaintiffs'

7    pleading inadequacies.  In that case, the court found that plaintiffs had adequately pleaded that

8    defendant operated the relevant restaurants.  *Id*. at 1043.  Specifically, the complaint in *Castaneda*

9    alleged the existence of common barriers across the various restaurants and that these restaurants

10   "were built according to one or a limited number of architectural design prototypes developed by

11   [the franchisor]."  *Id*. (quotation marks omitted).  Additionally, the complaint alleged that the

12   franchisor "exercised substantial control over . . . the leased restaurants, including over the

13   development, design, alteration, remodel, maintenance and operation of those restaurants" through

14   "enter[ing] into development agreements requiring construction of some or all of the California

15   restaurants or the performance of 're-imaging' programs at those restaurants in accordance with

16   [the franchisor's] designs."  *Id*.  Finally, the complaint pleaded that the franchisor "provided

17   building plans used to construct some or all of those restaurants and provided construction teams

18   to aid in designing and building some or all of those restaurants."  *Id*.

19             To put it plainly, Plaintiffs include no analogous allegations in the FAC.  The Court

20   therefore concludes that Plaintiffs have failed to allege that Defendant "operates" the relevant

21   restaurants.

22             Plaintiffs' only response to these authorities is to argue that many of them were decided on

23   summary judgment and that the Court should therefore deny Defendant's motion to dismiss.  Mot.

24   at 8.  The Court is not persuaded.  To be sure, the procedural posture of a case can be relevant, but

25   here, the fact of the matter is that Plaintiffs have not adequately alleged that Defendant exercised

26   and possessed "an active and significant degree of control over the access[] related aspects of the

27   facility in question."  *Lemmons*, 2014 WL 3107842, at *6.

28

Case No. 19-CV-06133-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In other words, even taking all of Plaintiffs' allegations in the FAC as true—which the

2    Court must do at the motion to dismiss stage—Plaintiffs have not stated a claim under Title III of

3    the ADA because the FAC does not include allegations that Defendant operates the relevant

4    restaurants at issue. *See Castaneda*, 597 F. Supp. 2d at 1043 (denying motion to dismiss because

5    the complaint alleged that defendant "exercised substantial control over . . . the leased restaurants,

6    including over the development, design, alteration, remodel, maintenance and operation of those

7    restaurants" through "enter[ing] into development agreements requiring construction of some or

8    all of the California restaurants, . . . 're-imaging' programs at those restaurants in accordance with

9    [the franchisor's] designs, . . . . provid[ing] building plans used to construct some or all of those

10   restaurants[,] and provid[ing] construction teams to aid in designing and building some or all of

11   those restaurants"). The fact that the aforementioned cases occurred at the summary judgment

12   stage does not absolve Plaintiffs from complying with Rule 8. As the United States Supreme

13   Court explained, "only a complaint that states a plausible claim for relief survives a motion to

14   dismiss" and "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing

15   more than conclusions." *Iqbal*, 556 U.S. at 678–79.

16   Accordingly, Plaintiffs have failed to allege that Defendant owns, leases, or operates the

17   relevant Wendy's-branded restaurants at issue in the instant case. As a result, the Court GRANTS

18   Defendant's motion to dismiss Plaintiffs' ADA claims.

19   Furthermore, as noted above, Plaintiffs' claims under the Unruh Act are premised on their

20   ADA claims. Therefore, because Plaintiffs have failed to state a claim under the ADA, they have

21   also failed to state a claim under the Unruh Act. *See Pride Mobility*, 2016 WL 6393549, at *6

22   (dismissing an Unruh Act claim that was premised on an ADA violation when plaintiff failed to

23   state a claim under the ADA). As a result, the Court also GRANTS Defendant's motion to

24   dismiss Plaintiffs' Unruh Act claims.

25   Nonetheless, because amendment would not be futile, cause undue delay, or unduly

26   prejudice Defendant, and because Plaintiffs have not acted in bad faith, the Court GRANTS

27   Plaintiffs leave to amend. *Leadsinger*, 512 F.3d at 532.

28

Case No. 19-CV-06133-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

## IV.     CONCLUSION

        For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with leave to amend.  Plaintiffs shall file any amended complaint within 30 days of this Order.  Failure to file an amended complaint within 30 days of this Order or failure to cure deficiencies identified herein or in Defendant's motion to dismiss will result in dismissal of the deficient claims with prejudice. Plaintiffs may not add new causes of action or new parties without a stipulation or leave of the Court.

**IT IS SO ORDERED.**

Dated: June 25, 2020

_____
LUCY H. KOH
United States District Judge

13

Case No. 19-CV-06133-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND